**LAW OFFICES OF FERGUSON, PRAET & SHERMAN, APC**
PETER J. FERGUSON SBN 108297
peterferg@aol.com
ALLEN CHRISTIANSEN SBN 263651
achristiansen@law4cops.com
1631 E. 18th Street
Santa Ana, California 92705
(714) 953-5300 • Fax (714) 953-1143

Attorneys for Defendants
CITY OF NEWPORT BEACH, OFFICER DIANNE HARRIS,
and OFFICER DE LA TORRE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JANE DOE,

                Plaintiff,

vs.

CITY OF NEWPORT BEACH,
CUSTODY OFFICER DIANNE
HARRIS, NEWPORT BEACH
POLICE OFFICER DE LA TORRE,
DOES 1 through 10, inclusive,

                Defendants.

No.  8:15-cv-00608 JAK (KES)

Hon. Karen E. Scott

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION TO QUASH SUBPOENAS;**

Date      : Under Submission
Time      : Under Submission
Courtroom : 6D

///

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION
TO QUASH SUBPOENAS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND FACTS

Delay, obstruction, failure to co-operate in discovery and outright misrepresentations to this Court has been Plaintiff's mantra since the inception of this case.

Plaintiff once again seeks to obstruct discovery not by simply bringing an *ex-parte* motion, but by unnecessarily bringing two separate motions for no other purpose than to unnecessarily delay, increase the costs of litigation and unnecessarily burden this Court.

Plaintiff contacted defense counsel Christiansen on January 5, 2016 to inform him that she would be bringing an *ex-parte* motion, under seal, to quash subpoenas on January 7, 2016 (although Plaintiff never identifies those subpoenas sufficiently for a motion to quash).  Counsel Christiansen informed Plaintiff that because she was doing so under seal, she would need to send the motion itself via **overnight** delivery to Defendants.  (See Christiansen Decl. attached hereto).

It appears that she instead chose not to file her *ex-parte* under seal, and then therein claims that she will also file another duplicative motion to quash under seal.  There is no reason for this game that Plaintiff continues to insist on playing.

It was not until Plaintiff realized that her medical records would necessarily need to be produced in this matter that she suddenly decided that she only had "garden variety" emotional distress - in direct opposition to the allegations in her complaint and her ***sworn testimony*** at deposition.

Plaintiff has continued to mislead this Court with her declarations, in this instance claiming that "Christiansen stated he will oppose the ex parte application because he believes that Plaintiff Jane Doe did not suffer 'garden-variety' emotional distress." (Dkt. No. 101, 3:7-9; Dkt. No. 101-1, 2:5-7).  In actuality, counsel Christiansen informed Plaintiff that he would oppose the *ex-parte* on the basis that Plaintiff is claiming severe emotional distress and PTSD as a direct

result of the alleged incident both in her Complaint and in her sworn deposition testimony and not "garden variety"[1] emotional distress as she's now trying to claim for the sole purpose of further obstructing discovery.  See Christiansen Decl.

Plaintiff has also intentionally obstructed and further mislead this Court by claiming for months that she would "conform her Complaint" to the facts of this case and that an attorney would be substituting in.  Neither of these things have happened - they are simply more intentional misrepresentations for purposes of obstructing the discovery process, intentionally harassing defendants, needlessly increasing the costs of litigation, and delaying this litigation.

Plaintiff's *ex-parte* application should be denied, any duplicative motion that Plaintiff files (as indicated within her *ex-parte*) should be denied as moot upon filing and this Court should issue an order compelling production of the documents sought.

## II.   PLAINTIFF IS CLAIMING MORE THAN "GARDEN VARIETY" EMOTIONAL DISTRESS IN THIS MATTER

Plaintiff has obviously found the term "garden variety" in her research of ways to prevent Defendants from obtaining her medical records.  Plaintiff claims that she wants to conform her complaint to state that she's only claiming "garden variety" emotional distress after realizing that her medical records were a necessary part of discovery and now that Defendants have requested available dates from Plaintiff for an IME.

///

---

[1]Plaintiff continues to use the term "garden variety" emotional distress which she obviously found in case law that supports the position that medical records need not be produced for claims of "garden variety" emotional distress - however, that does not apply in this matter where Plaintiff has claimed (and testified to) severe emotional distress and PTSD.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION
TO QUASH SUBPOENAS

1    However, Plaintiff amending her Complaint to allege "garden variety"

2 emotional distress would be a farce and would not be conforming her Complaint

3 to the **facts** of this case.

4    Plaintiff's Complaint alleges that, as a result of the alleged incident,

5 "Plaintiff was traumatized ... requiring treatment for trauma and post-traumatic

6 stress syndrome for which she has incurred expense." (Complaint, ¶31).

7    In her deposition Plaintiff made potentially contradictory allegations, first

8 seemingly alleging that she had suffered Post-Traumatic Stress Disorder ("PTSD")

9 for some time, while also alleging that it was not until August 2014 that she was

10 formally diagnosed by her psychiatrist with PTSD as a result of the alleged

11 incident.  (See generally Doe Deposition of 10/21/2015, **Exhibit A,** Pages 106-

12 111 and 370-371).

13    Plaintiff cannot now go back and "conform her Complaint" by now alleging

14 "garden variety" PTSD for the sole purpose of obstructing discovery when

15 Plaintiff's own testimony is that she was officially diagnosed with PTSD as a

16 direct result of the alleged incident.  The medical records are necessary.

17    Plaintiff's only reasoning for refusing to produce her medical records and

18 for seeking to quash the subpoenas are that they "are irrelevant to any claim or

19 defense in this lawsuit, and they are protected by the psychotherapist-patient

20 privilege" (Dkt. No. 101, 6:11-13).

21    This is false, they are completely relevant to Plaintiff's claims in this lawsuit

22 because she has alleged severe emotional distress and PTSD in her Complaint and

23 also testified to severe emotional distress and PTSD in her sworn deposition

24 testimony as a direct result of the alleged incident.

25    Plaintiff's *ex-parte* must be denied.

26

27

28 ///

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION
TO QUASH SUBPOENAS

### A. Defendants have Already Begun Expending Resources on Retained Experts and the Records are Necessary for Review Prior to Plaintiff's IME

Defendants have already selected police procedures and psychological / psychiatric experts in this matter and have begun expending resources on those experts, monetary and otherwise, on the basis of Plaintiff's allegations and sworn testimony.

Defendants seek an IME with their psychological / psychiatric experts who have informed Defendants of the need to review Plaintiff's existing psychiatric and psychological records prior to having her sit for an IME.

Plaintiff has refused to produce medical records as sought in discovery, as a result, Defendants issued subpoenas to the medical centers identified in her deposition testimony (and, prior to doing so, had requested that Plaintiff sign waivers to more speedily obtain those records, which she also refused).   See Christiansen Decl.

Plaintiff has now also refused to cooperate in providing dates of availability to attend an IME and refuses to attend an IME which will require yet another motion to compel Plaintiff.  See Christiansen Decl.

Plaintiff didn't come up with the theory of amending her Complaint to allege "garden variety" emotional distress until she realized her claims required disclosure of her medical records.  Despite this, Plaintiff has never amended her Complaint, has never filed a motion to allow amendment of her Complaint, and has never requested a stipulation to amend her Complaint nor provided a proposed amended Complaint.

The sole purpose for these new claims is for the sole purpose of further obstructing discovery.  The impending discovery cutoff is rapidly approaching and has already been continued, if Plaintiff were going to file an amended Complaint that contradicts her own testimony she should have already done so and doing so

now would be yet another intentional delaying tactic and an intentional waste of resources.

Plaintiff's *ex-parte* must be denied.

## III. PLAINTIFF'S *EX-PARTE* MOTION TO QUASH IS MOOT, IN PART, BECAUSE SOME RECORDS HAVE ALREADY BEEN PRODUCED

To the extent that Plaintiff seeks to quash the subpoena to the Therapeutic Residential Center, such records have already been produced pursuant to the subpoena. Those records are already helpful and valuable to the defense of this matter because they indicate that Plaintiff may have made similar claims in the past and may not be a good historian of real events based upon diagnoses therein.

These records are necessary to the defense of this matter as are the other records sought by subpoena and are necessary to the defense of this matter and for the preparation of the Plaintiff's IME by the psychologist and psychiatrist.

As such, Plaintiff's motion must be denied, at least in part, as moot.

## IV. CONCLUSION

There has been one common theme throughout this litigation - that Plaintiff will make whatever statements she thinks will allow her to get her way, whether they be true or not, when it comes to this litigation.

It took months before Defendants were able to depose Plaintiff and even then Defendants were, by Court order, denied their ability to appropriately impeach Plaintiff regarding video evidence of the event which directly contradicted the allegations in Plaintiff's complaint.

Over a hundred pages of Plaintiff's deposition transcript has now been excessively redacted, by order of this Court, to the extent that some pages are nearly completely redacted.

Plaintiff has continued to obstruct discovery and has outright refused to produce medical documents directly relevant to her claims, and Defendants'

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION TO QUASH SUBPOENAS

defense of this matter requiring Defendants to serve subpoenas on those alleged medical providers.

Plaintiff has outright refused to cooperate with Defendants in providing dates of availability to allow any psychiatric and psychological IME which are intended to directly address the allegations in her complaint and her sworn testimony.

Plaintiff is now seeking to quash those subpoenas by making misrepresentations to this Court that she's claiming only "garden variety" emotional distress for the sole purpose of obstructing this discovery and in direct contradiction to her allegations and her sworn deposition testimony.

Defendants have been continuously and unabatedly hindered in their defense of this matter, yet have complied with Court orders and unnecessary redactions despite these hindrances.

At some point Defendants must be allowed to effectively defend their case and these hindrances must stop.  If Plaintiff wants to amend her complaint to contradict her own deposition testimony she can do so, but this Court should not entertain the notion that she intends to do so, when she hasn't done so for months. The Court should not entertain the notion that she intends to get an attorney when, once again, she still has not done so.

There is no reason, compelling or otherwise, that the subpoenas should be quashed.  Plaintiff has claimed severe emotional distress and a medical diagnosis of PTSD caused directly by the alleged incident and Defendants are entitled to discovery on those claims.  Plaintiff's motion must be DENIED.


DATED: January 7, 2016          FERGUSON, PRAET & SHERMAN, APC

                                 /s/ Allen Christiansen
                                Allen Christiansen  SBN 263651
                                Attorneys for Defendants City of Newport Beach,
                                Officer Dianne Harris and Officer De La Torre


DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION
TO QUASH SUBPOENAS

6

**DECLARATION OF ALLEN CHRISTIANSEN**

I, ALLEN CHRISTIANSEN, declare as follows:

1. I am an attorney at law authorized to practice law before all the courts of the State of California, the State of Hawaii and the United States Supreme Court and am an associate at the Law Offices of Ferguson, Praet & Sherman, A Professional Corporation, which is the attorney of record for the Defendant City of City of Newport Beach, Dianne Harris and Officer De La Torre. The following declaration is made from personal knowledge and if I were called upon as a witness, I could and would competently testify under oath to the facts stated below in this declaration.

2. Attached hereto as **Exhibit A** is a true and correct copy of portions of Plaintiff's deposition transcript using redacted pages by Court order for portions thereof as required. Plaintiff's testimony therein is that she suffered such severe emotional distress that she was traumatized and, in August 2014, received a medical diagnosis of PTSD as a direct result of the alleged incident. Defendants are necessarily seeking records relating to this sworn testimony.

3. Attached hereto as **Exhibit B** is a true and correct copy of a letter from Plaintiff refusing to provide medical documents requested in discovery.

4. Attached hereto as **Exhibit C** is a true and correct copy of a letter from Plaintiff refusing to cooperate and refusing to attend any IME.

5. Plaintiff has obstructed discovery and hindered the defense of this matter from the outset. Exhibits B and C attest to more of the same. Plaintiff now wants to convince the Court that she intends to amend her Complaint to now remove any allegations that would require production of these records - this is nothing more than a sham.

Plaintiff's own motion admits that she filed a document with this Court back in November 2015 that she intended to amend her Complaint, yet she did not.

Plaintiff also, for purposes of seeking to extend deadlines, told this Court

that she was getting an attorney, yet she has not.

Plaintiff's statements cannot be taken at face value because they have repeatedly been misrepresentations.

6.  In her motion and declaration, Plaintiff claims that I told her I was opposing the motion because I did not believe she had "garden variety" emotional distress.  In fact, what I told her was that she cannot claim that she only has "garden variety" emotional distress to avoid discovery because based upon the contradictory allegations in her Complaint and her very own sworn deposition testimony, she suffered extreme emotional distress and trauma and was diagnosed with PTSD.

7.  In an attempt to move forward and obtain discovery without further Court intervention, I sent a meet and confer letter to Plaintiff on December 2, 2015 demanding that she provide responses to discovery relating to her medical treatment and diagnosis as requested.  It was not until December 18, 2015 that Plaintiff responded in writing that she would not do so.

On December 22, 2015, I sent another meet and confer requesting that Plaintiff provide me dates of availability for psychological and psychiatric IMEs and, once again, Plaintiff refuses to cooperate which will require that I unilaterally obtain dates from the experts and move to compel her attendance.

///

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION TO QUASH SUBPOENAS

8.  It was Plaintiff who put all of these outrageous claims in her Complaint and testified to them at deposition so that she could seek to extort money from the City.  She cannot now refute her own allegations and testimony because it is inconvenient to her.  Her continued refusals to cooperate in this matter and continued attempts to cause unnecessary delay and expense must not be entertained and her motion must be denied.

I declare under penalty of perjury under the laws of the State of California that the foregoing declaration is true and correct.  Executed January 7, 2016 at Santa Ana, California.

 /s/ Allen Christiansen
ALLEN CHRISTIANSEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION
TO QUASH SUBPOENAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


JANE DOE,                        )
                                 )
            Plaintiff,           )
                                 )
        vs.                      )  Case No.: SACV15-00608 JAK
                                 )             (RNBx)
CITY OF NEWPORT BEACH,           )
CUSTODY OFFICER DIANNE HARRIS,)
NEWPORT BEACH POLICE OFFICER     )
DE LA TORRE, DOES 1 through      )
10, inclusive,                   )
                                 )
            Defendants.          )
_____)


VIDEOTAPED DEPOSITION OF JANE DOE

WEDNESDAY, OCTOBER 21, 2015, 10:19 A.M.

SANTA ANA, CALIFORNIA


Reported by Jenny Craig, CSR No. 11094
Job No. 15270

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   JANE DOE,                    )
                                  )
 6             Plaintiff,         )
                                  )
 7        vs.                     ) Case No.: SACV15-00608 JAK
                                  )           (RNBx)
 8   CITY OF NEWPORT BEACH,       )
     CUSTODY OFFICER DIANNE HARRIS,)
 9   NEWPORT BEACH POLICE OFFICER )
     DE LA TORRE, DOES 1 through  )
10   10, inclusive,               )
                                  )
11             Defendants.        )
     _____)
12

13

14

15

16

17

18

19

20

21        VIDEOTAPED DEPOSITION of JANE DOE, taken at

22   1631 East 18th Street, Santa Ana, California, on

23   Wednesday, October 21, 2015, at 10:19 a.m., before

24   Jenny Craig, Certified Shorthand Reporter, in and for

25   the State of California.
```

Jane Doe                    10/21/2015

```
1   APPEARANCES:

2   For Plaintiff:

3           JANE DOE
            In Pro Per
4           220 Newport Center Drive, 11-233
            Newport Beach, California 92660
5           (949) 355-3437
            janedoe919@icloud.com
6
    For Defendants:
7
            FERGUSON, PRAET & SHERMAN
8           BY:  ALLEN CHRISTIANSEN
                 Attorney at Law
9           1631 East 18th Street
            Santa Ana, California 92705
10          (714) 953-5300
            achristiansen@law4cops.com
11
    The Videographer:  MARK HOWARD
12                     Thrust Productions, Inc.

13  Also Present:  Sergeant William Depweg
                   Officer Antonio De La Torre
14

15

16

17

18

19

20

21

22

23

24

25
```

Jane Doe                                    10/21/2015

```
 1                       INDEX
 2   WITNESS: Jane Doe
 3
 4   EXAMINATION                              PAGE
 5   By Mr. Sherman                             8
 6
 7
 8                INFORMATION REQUESTED
 9                      (None)
10
11
12
13             QUESTIONS NOT ANSWERED
14                      (None)
15
16
17
18
19                 TRANSCRIPT MARKED
20                      (None)
21                    *   *   *
22
23
24
25
```

Stenogal Reporting
(714) 299-0518

Jane Doe                                    10/21/2015

```
 1                    INDEX TO EXHIBITS

 2    EXHIBITS                                        MARKED

 3    Exhibit A     Defendants' Third Amended Notice of      16
                    Taking Deposition of Plaintiff Jane
 4                  Doe

 5    Exhibit B     Documents produced at deposition         21

 6    Exhibit C     Order re ex parte applications for       84
                    protective order and to compel
 7                  Plaintiff's deposition

 8    Exhibit D     Website (in envelope)                    84

 9    Exhibit E     Summary of events                       235

10    Exhibit F     Hand drawn diagram                      284

11    Exhibit G     Complaint filed with Newport Beach      296
                    Police Department
12
      Exhibit H     Complaint for Damages                   322
13
      Exhibit H-1   Complaint for Damages (in envelope)     326
14

15                            *   *   *

16

17

18

19

20

21

22

23

24

25
```

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | WEDNESDAY, OCTOBER 21, 2015, 10:19 A.M.                   |
|       | 2  | SANTA ANA, CALIFORNIA                                     |
| 09:47 | 3  |                                                          |
| 10:19 | 4  | THE VIDEOGRAPHER:  Good morning.  We are on the           |
| 10:19 | 5  | record.                                                  |
| 10:19 | 6  | This is the video recorded deposition of                 |
| 10:19 | 7  | Jane Doe in the matter of Jane Doe versus City of        |
| 10:19 | 8  | Newport Beach, et al., case number SACV15-00608 JAK      |
| 10:19 | 9  | (RNBx).                                                  |
| 10:19 | 10 | This deposition is taking place at the law               |
| 10:19 | 11 | offices of Ferguson, Praet & Sherman located at 1631     |
| 10:19 | 12 | East 18th Street, Santa Ana, California, on Wednesday    |
| 10:19 | 13 | October 21st, 2015, at 10:19 a.m.                        |
| 10:19 | 14 | My name is Mark Howard.  I'm the                         |
| 10:19 | 15 | videographer representing Thrust Productions, Inc.,      |
| 10:20 | 16 | in Laguna Niguel, California.  Video and audio           |
| 10:20 | 17 | recording will be taking place unless all counsel       |
| 10:20 | 18 | have agreed to go off the record.                        |
| 10:20 | 19 | Would all present please identify themselves            |
| 10:20 | 20 | beginning with the witness.                              |
| 10:20 | 21 | MS. DOE:  I am Jane Doe and I am plaintiff in            |
| 10:20 | 22 | pro se.                                                  |
| 10:20 | 23 | MR. SHERMAN:  Good morning.  Steven Sherman on          |
| 10:20 | 24 | behalf of defendants.  I have with me Officer De La     |
| 10:20 | 25 | Torre and Sergeant --                                    |

Jane Doe                                    10/21/2015

10:20  1          SERGEANT DEPWEG:  Depweg.

10:20  2          MR. SHERMAN:  -- Depweg.  Thank you.

10:20  3          THE VIDEOGRAPHER:  The certified court reporter

10:20  4    today is Jenny Craig.

10:20  5              Would you please swear in the witness.

10:20  6

10:20  7                        JANE DOE,

10:20  8    having been first duly sworn, testifies as follows:

10:20  9          THE WITNESS:  Yes.

10:20  10         MR. SHERMAN:  Yes?

10:20  11         THE WITNESS:  May I ask you a question?

10:20  12         MR. SHERMAN:  Certainly.  Usually we don't do

10:20  13   this, but go ahead.

10:20  14         THE WITNESS:  Sergeant Depweg is not a

10:20  15   defendant.

10:20  16         MR. SHERMAN:  Actually, he's a City

10:20  17   representative so the City is a named defendant.

10:21  18   You -- you've named -- I'll -- I'll tell you what,

10:21  19   why don't we go a little into the record and then

10:21  20   anything you'd like to say in that regard we can

10:21  21   cover, okay?

10:21  22         THE WITNESS:  Okay.

10:21  23   ///

10:21  24   ///

10:21  25   ///

Jane Doe                                           10/21/2015



| | | |
|---|---|---|
| 2:28 | 1 | Q    That would have been October 31st, 2014; |
| 12:28 | 2 | correct? |
| 12:28 | 3 | A    But I terminated.  I -- I officially severed |
| 12:28 | 4 | my ties ███████████████████ prior to October 31st |
| 12:28 | 5 | ████████████████████████████ |
| 12:28 | 6 | Q    Okay.  And when did you ██████████████? |
| 12:28 | 7 | A    May 16th, 2014. |
| 12:29 | 8 | Q    What is your date of birth? |
| 12:29 | 9 | A    ████████████ |
| 12:29 | 10 | Q    You're young.  I was born in the '50s as |
| 12:29 | 11 | well, so we know you're not elder. |
| 12:29 | 12 | Do you have any type of disability? |
| 2:29 | 13 | A    I suffer from post-traumatic stress syndrome |
| 12:29 | 14 | and I have since -- I have for a while.  I also have |
| 12:29 | 15 | ██████████████████████████████ |
| 12:29 | 16 | ██████████████████████████████ |
| 12:30 | 17 | Q    Okay.  And when were you |
| 12:30 | 18 | ██████████████████████████████ |
| 12:30 | 19 | ██████████████████████████████ |
| 12:30 | 20 | ██████████████████████████████ |
| 12:30 | 21 | ██████████████████████████████ |
| 12:30 | 22 | Q    I saw the paperwork on it.  You submitted |
| 12:30 | 23 | that as some of your documents in response to your |
| 12:30 | 24 | production request. |
| 2:30 | 25 | A    My ████? |

Stenogal Reporting
(714) 299-0518

106

Jane Doe                                    10/21/2015

| | | |
|---|---|---|
| 2:30 | 1 | Q   Yes. |
| 12:30 | 2 | A   Yes, I did. |
| 12:30 | 3 | Q   So let's talk about the items that we just |
| 12:30 | 4 | referenced. |
| 12:30 | 5 | Have you ever been formally -- have you ever |
| 12:30 | 6 | been formally diagnosed with post-traumatic stress |
| 12:30 | 7 | disorder? |
| 12:30 | 8 | A   Yes. |
| 12:30 | 9 | Q   When was that? |
| 12:30 | 10 | A   Sometime after I began to see my |
| 12:30 | 11 | psychiatrist in August 2014. |
| 12:31 | 12 | Q   Prior to that diagnosis from the |
| 2:31 | 13 | psychiatrist that you saw in August 2014, had you |
| 12:31 | 14 | ever been formally diagnosed with -- |
| 12:31 | 15 | A   I don't know. |
| 12:31 | 16 | Q   Okay.  You're not sure? |
| 12:31 | 17 | A   I don't know. |
| 12:31 | 18 | Q   Okay.  Who is your psychiatrist that you saw |
| 12:31 | 19 | in August '14 that gave you that diagnosis? |
| 12:31 | 20 | A   ████████████████████████████████ |
| 12:31 | 21 | Q   He's in ████████████ |
| 12:31 | 22 | A   That's correct. |
| 12:31 | 23 | Q   ████████████████████████████████ |
| 12:31 | 24 | A   I think he's ████████████ is he not?  It's on |
| 2:31 | 25 | the -- it's on the bill that I gave you. |

Stenogal Reporting
(714) 299-0518

107

Jane Doe                               10/21/2015

12:31   1        Q    For some --

12:31   2        A    I -- I don't --

12:31   3        Q    For some reason I have --

12:31   4        A    I don't think it's -- I don't think it's

12:31   5   Newport Center Drive.  I believe it's -- if you'll

12:31   6   look at the -- could I see, please, the bill that I

12:31   7   submitted as part of my things to be produced?

12:31   8   It's -- it's --

12:32   9        Q    Where -- where his address is is -- is

12:32   10  irrelevant.  I mean, I have it as Newport Beach

12:32   11  Center Drive.  If you believe it's something

12:32   12  different --

12:32   13       A    That's my mailing address is Newport

12:32   14  Beach -- is -- is Newport Center Drive.

12:32   15       Q    Whose mailing address?

12:32   16       A    That's my mailing address.

12:32   17       Q    400 Newport --

12:32   18       A    No.  My mailing address is 220 Newport

12:32   19  Center Drive.

12:32   20       Q    Is that like a PO Box or something?

12:32   21       A    It is -- I have a PO Box there.

12:32   22       Q    What is 200 Newport Center Drive?

12:32   23       A    It's a mail center that does mail services

12:32   24  and also rents out post office boxes.

12:32   25       Q    Okay.  It's a little retail establishment;

Jane Doe                         10/21/2015

12:32   1   correct?

12:32   2         A    I don't know what you mean by "retail."

12:32   3         Q    It's not the United States Postal Service?

12:32   4         A    It's not the United States Postal Service.

12:33   5         Q    Okay.  Prior to your treatment and diagnosis

12:33   6   of post-traumatic stress disorder at or about August

12:33   7   of 2014, had -- no one to your knowledge had formally

12:33   8   diagnosed you with post-traumatic stress disorder;

12:33   9   correct?

12:33  10         A    I had diagnosed myself.

12:33  11         Q    But you never went to medical school.

12:33  12              When did you diagnose yourself with it?

12:33  13         A    Oh --

12:33  14         Q    Just for the record, I self-diagnose all the

12:33  15   time.  WebMD has been horrible for me.

12:33  16         A    I diagnosed myself as early as May 2014

12:33  17   but --

12:33  18         Q    And what do you base that self-diagnosis --

12:34  19   self-diagnosis as early as May of 2014 on?

12:34  20         A    Based on the trauma that I had suffered

12:34  21   prior to that.

12:34  22              May I have a rest room break?

12:34  23         MR. SHERMAN:  Absolutely.

12:34  24         THE VIDEOGRAPHER:  Are we going off the record?

12:34  25         MR. SHERMAN:  Yeah, we have to go off the record

Jane Doe                                        10/21/2015

| | | |
|---|---|---|
| 2:34 | 1 | because -- |
| 12:34 | 2 | THE VIDEOGRAPHER: We are -- |
| 12:34 | 3 | MR. SHERMAN: -- she has to go to the restroom. |
| 12:34 | 4 | THE VIDEOGRAPHER: We are going off the record |
| 12:34 | 5 | at 12:34 p.m. |
| 12:34 | 6 | (Recess taken) |
| 12:38 | 7 | THE VIDEOGRAPHER: We are going on the record at |
| 12:40 | 8 | 12:40 p.m. |
| 12:40 | 9 | BY MR. SHERMAN: |
| 12:40 | 10 | Q    Okay.  We're back on the record.  And you |
| 12:40 | 11 | realize, of course, that you are still under oath; |
| 12:40 | 12 | correct? |
| 2:40 | 13 | A    I understand. |
| 12:40 | 14 | Q    Okay.  When we left off, we were talking |
| 12:40 | 15 | about the fact that you have been diagnosed with |
| 12:40 | 16 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and you |
| 12:40 | 17 | believe ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 12:40 | 18 | A    I've been diagnosed with ▮▮▮▮▮▮▮▮ |
| 12:40 | 19 | Q    Okay.  That's a diagnosis as well? |
| 12:40 | 20 | A    Yes. |
| 12:40 | 21 | Q    And was that by Dr. ▮▮▮▮▮ as well? |
| 12:40 | 22 | A    Dr. ▮▮▮▮▮ |
| 12:40 | 23 | Q    And would that have been at about the same |
| 12:41 | 24 | time of August of 2014? |
| 2:41 | 25 | A    I started seeing Dr. ▮▮▮▮▮ in August 2014. |

Jane Doe                                                          10/21/2015

```
2:41    1        Q    Do you know when the diagnoses were made?
12:41   2        A    We disc- -- I had seen Dr. ████    previously
12:41   3   so it was a long-standing diagnosis.  The
12:41   4   ███████████████████████████████  diagnosis was made in
12:41   5   August.
12:41   6        Q    Okay.  Was there an earlier date for the
12:41   7   ██████████████████  diagnosis?
12:41   8        A    I've suffered from ███████████  for many, many
12:41   9   years.  I don't recall when it began.  Some people
12:41  10   think that my ████████  is normal, but sometimes I
12:41  11   think it's, you know, a little discomforting.  I get
12:41  12   feelings in my stomach, you know, and I -- I just --
2:42   13   I -- I -- I worry and ██████████████████  maybe more
12:42  14   than most people or maybe more than some people.
12:42  15        Q    You have more tsuris than a lot of people,
12:42  16   you're saying, huh?
12:42  17        A    I have more what?
12:42  18        Q    Tsuris.  Yiddish.  Tsuris.
12:42  19        A    How do you spell it?
12:42  20        Q    It's been a hundred years since I've been in
12:42  21   Hebrew school.  I can't tell you.  I believe it's
12:42  22   spelled with a t-s, tsuris.
12:42  23        A    Tsuris.
12:42  24        Q    It's Yiddish but --
2:42   25        A    Are you Jewish?
```

Jane Doe                                    10/21/2015

06:58  1   of that?  Did she damage your clitoris?

06:58  2        A    No.  She did not damage my clitoris.

06:59  3        Q    Did she damage your breasts?

06:59  4        A    No.  She did not damage my breasts.

06:59  5        Q    So did you suffer any actual physical

06:59  6   damage?  Were you bruised, scratched, cut?

06:59  7        A    Not to my knowledge.

06:59  8        Q    Well, if you don't have knowledge today, a

06:59  9   year and eight months or six months afterwards --

06:59  10       A    The mental anguish --

06:59  11       Q    We're going to get to that in a second.

06:59  12            Any physical injuries?

06:59  13       A    To my knowledge, she did not bruise me.  It

06:59  14  was an offensive and uncomfortable touching.

06:59  15       Q    Okay.  No physical damage; correct?

06:59  16       A    That's correct.

06:59  17       Q    Let's talk about emotional.  Any emotional

06:59  18  damage?

06:59  19       A    Trauma.

06:59  20       Q    And I understand that's a wonderful word.

06:59  21            What kind of emotional trauma?

06:59  22       A    The trauma of having someone put their hand

06:59  23  under my dress, pull down my underpants, stroke my

07:00  24  genitalia and stroke my bare breasts.

07:00  25       Q    What kind of effect has that had on you?

Jane Doe                                           10/21/2015

07:00  1    What has it caused you to do?  Has it caused you to

07:00  2    have nightmares, wet your pants?

07:00  3         A    I was in a state of repressed shutdown for a

07:00  4    matter of months following the trauma that you see

07:00  5    beginning when you see me on the bench screaming of

07:00  6    what she had done to me.  I was in a state of trauma

07:00  7    as of then.  And then when you hear me in the -- in

07:00  8    the booking cell saying, You filthy animals -- I

07:00  9    mean, what do you think I'm referring to?  Do you

07:00  10   think I'm making this up?

07:00  11        Q    What were you referring to --

07:00  12        A    I -- what I was referring -- the deviant

07:00  13   conduct that she did to me.

07:00  14        Q    That which you've described in your

07:00  15   deposition and in your lawsuit and that we see on

07:00  16   videos B and C; correct?

07:00  17        A    And what you cannot see on the video, but

07:01  18   what you can infer from the fact that the camera does

07:01  19   not show everything, but what we can see of what she

07:01  20   is doing.

07:01  21        Q    Okay.  And I believe these tapes speak for

07:01  22   themselves, that's why I've tried to get you to

07:01  23   testify as to what's not on the tapes.  You

07:01  24   understand that's what I was trying to do?

07:01  25        A    I understand that you're trying to -- that

Stenogal Reporting
(714) 299-0518

Jane Doe                           10/21/2015

REPORTER'S CERTIFICATION

1

2

3        I, Jenny Craig, Certified Shorthand Reporter in

4   and for the State of California do hereby certify:

5

6        That the foregoing witness was by me duly sworn;

7   that the deposition was then taken before me at the time

8   and place herein set forth; that the testimony and

9   proceedings were reported stenographically by me and later

10  transcribed into typewriting under my direction; that the

11  foregoing is a true record of the testimony and

12  proceedings taken at that time.

13

14       IN WITNESS WHEREOF, I have subscribed my name,

15  this date: _November 4, 2015_____.

16

17

18

19

20   _____

        Jenny Craig, CSR No. 11094

21

22

23

24

25

Stenogal Reporting
(714) 299-0518

411

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

     I, Coleen Ludvigson, am employed in the aforesaid County, State of California; I am over the age of 18 years and not a party to the within action.  My business address is 1631 East 18th Street, Santa Ana, California 92705-7101.

     On January 7, 2016 I served the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX-PARTE* APPLICATION TO QUASH SUBPOENAS;** on the interested parties in this action:

Jane Doe
220 Newport Center Drive 11-233
Newport Beach, CA 92660
janedoe919@icloud.com
*Pro Se* Plaintiff

____   (By Mail)    I placed such envelope for deposit in accordance with office practice, sealed, with postage thereon fully paid and the correspondence to be deposited in the United States mail at Santa Ana, California on the same day.

____   (By Facsimile Service) I caused such envelope/document to be delivered via facsimile to the office of the addressee.

<u>XXX</u>  (By e-filing) The above noted individuals are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

____   (By e-mail) Plaintiff has communicated with Defendants via the above listed email address and has requested that Defendants serve Plaintiff documents via email at that email address.

<u>XXX</u>  (Federal)  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 7, 2016, at Santa Ana, California.

                               /s/ Coleen Ludvigson
                               Coleen Ludvigson